IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
ex. rel. GILBERTO GONZALEZ, )
 )
        Petitioner, )
 )
  v. ) No. 13 C 314
 )
MICHAEL ATCHISON, Warden, )
 )
        Respondent. )

## MEMORANDUM OPINION AND ORDER

On January 15, 2013 the Clerk's Office received a self-prepared Petition for Writ of Habeas Corpus ("Petition") in which Gilberto Gonzalez ("Gonzalez") challenged his conviction on a first-degree murder charge on which he is serving a 48-year sentence.[1] Because the incompleteness of the information contained in the Petition about Gonzalez' several efforts to obtain judicial relief left the timeliness of the Petition unanswered, this Court immediately issued a January 17, 2013 memorandum opinion and order ("Opinion") requesting supplemental information needed for determination of the timeliness issue.

On February 4 this Court received a motion from Gonzalez that did not speak to the matters raised in the Opinion, but instead asked this Court to enter a stay-and-abey order. Again

---

[1] Each of this Court's earlier written opinions in this case has treated Gonzalez' filing date as December 24, 2012 rather than the mid-January date of the Petition's receipt, thus giving effect to the "mailbox rule" prescribed by Houston v. Lack, 487 U.S. 266 (1988). This opinion will do the same.

this Court acted swiftly--on February 6 it issued a memorandum order entering and continuing that motion and granting Gonzalez additional time to respond to the directive in the Opinion. But on the very next day (February 7) a bulky submission arrived in this Court's chambers that contained the information this Court had originally requested.[2] With Gonzalez now having provided a detailed sequence of his post-conviction efforts, this opinion will review the bidding in terms of the one-year statute of limitations prescribed by 28 U.S.C. §2244(d)("Section 2244(d)").

As for Gonzalez' direct review of his conviction in the state court system, Opinion at 2 has correctly identified March 25, 2009 as the date on which the Illinois Supreme Court denied leave to appeal from the Illinois Appellate Court's affirmance of that conviction. Opinion at 2 then went on to state (also correctly) that even though Gonzalez did not then seek a writ of certiorari from the United States Supreme Court, the controlling caselaw tacked on the 90-day period allowed for doing so. Hence the limitations clock began to tick on June 23, 2009 in those terms.

But Gonzalez' supplemental submission provides an added wrinkle: His appellate counsel failed to advise him of the Illinois Supreme Court's March 25 denial, so it was not until

---

[2] That filing and this Court's February 6 follow-up request had obviously crossed in the mails.

2

Gonzalez later received word from the clerk of that court that his pro se effort to add something to the appeal would be turned down because of untimeliness that he first learned that leave to appeal had been denied. That could perhaps defer the commencement of the limitations clock until about November 1, 2009, when Gonzalez first got the word.[3]

So for the first step of the limitations calculation, the amount of time that elapsed on the one-year limitations clock before Gonzalez made any effort toward launching a state post-conviction challenge, it will be remembered that Section 2244(d)(1)(A) speaks of the starting date in these terms:

> the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

Literal application of that language would treat 5 months and 15 days (from June 23 to December 8, 2009, the latter date being the date on which Gonzalez filed a motion in the Circuit Court of Cook County asking leave to file a late post-conviction petition in the state court system) as having run on the clock. But on

---

[3] This Court employs the "could perhaps" locution here because what this opinion seeks to do is simply to identify, but not attempt to resolve, various of the issues bearing on the timeliness or untimeliness of the Petition. Hence this Court has not researched the question whether prevailing caselaw calls for a strict reading of AEDPA's time constraints (thus mandating the use of the June 23 date) or, on the other hand, allows some equitable bending of the rules to bring the November 1 date into play. Depending on some of the other calculations addressed in this opinion, that issue may or may not ultimately have to be explored.

the other hand, if some equitable refinement were appropriate, the elapsed time could be only 1 month and 7 days (from about November 1 to December 8, 2009).

At the other end of the line the calculation involves no ambiguity. As Opinion at 2 states, on September 26, 2012 the Illinois Supreme Court denied leave to appeal from the Appellate Court's affirmance of the dismissal of Gonzalez' post-conviction petition, so that another 2 months and 28 days elapsed from that date until the December 24, 2012 date that is being treated as his filing date of the federal Petition now before this Court.

To summarize the just-completed discussion, the use of the June 23, 2009 date called for by a literal reading of Section 2244(d)(1)(A) would mean that the combined time that ran off the one-year clock from the two elements was 8 months and 13 days (5 months and 15 days plus 2 months and 28 days), while using November 1, 2009 would instead mean that the combined runoff was just 4 months and 5 days (1 month and 7 days plus 2 months and 28 days). And what that then means is that the Petition would be barred by Section 2244(d)(1)'s one-year limitations provision (a) if another 3 months and 18 days are not tolled under Section 2244(d)(2) if the one-year provision is applied as it reads literally or (b) if another 7 months and 26 days are not tolled if equitable considerations can relax the literal reading of the statute.

4

It is the remaining centerpiece of the puzzle that poses a question that this Court has not seen discussed in the course of a threshold look at the reported caselaw on the subject. Here is the tolling provision of Section 2244(d)(2):

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

And here is our Court of Appeals' teaching on that score in Fernandez v. Sternes, 227 F.3d 977, 978 (7th Cir. 2000)(most citations omitted):

> We held in Freeman v. Page, 208 F.3d 572 (7th Cir. 2000), that whether a petition is "properly filed" depends on state law, so that if a state court accepts and entertains it on the merits it has been "properly filed" but that if the state court rejects it as procedurally irregular it has not been "properly filed." A corollary, recognized in Jefferson v. Welborn, 222 F.3d 286 (7th Cir. 2000), is that a petition that fails to comply with state procedural requirements is still "properly filed" if the state accepts it and issues a decision on the merits. Jefferson applies to §2244(d) the approach that Harris v. Reed, 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), announces for determining when a procedural default under state law forecloses federal relief on collateral attack: if the state enforces its procedural rules and deems the claim forfeited, then federal review is barred; if the state excuses a default, then federal review is proper.

Both the Circuit Court of Cook County and the Illinois Appellate Court ultimately dealt with Gonzalez' state post-conviction petition on the merits. For that reason the relation-back approach taught in Fernandez and other cases might perhaps

5

be taken to suggest that Gonzalez' November 28, 2009 transmittal to the Circuit Court of a request for leave to file a late state post-conviction petition somehow rendered the later-tendered petition "properly filed," so that the petition was "pending" before the Illinois courts until the Illinois Supreme Court's September 26, 2012 denial of leave to appeal.

But in this instance there is something deeply troubling about any such analysis: Unlike all of the reported cases in which the petitioner actually tendered a request for late filing <u>together with the petition itself</u>, in this instance the request for permission to file later was the only thing that Gonzalez submitted--it was a lengthy November 9, 2009 motion (stamped as having been received by the Clerk of the Circuit Court of Cook County on December 8, 2009) that dwelt at great length on the asserted reason for Gonzalez' tardy request--that is, the failure of his appellate counsel on direct review to have apprised him of the Illinois Supreme Court's denial of leave to appeal on direct review, causing Gonzalez' belated discovery of that denial.

Understandably, no response to that request was forthcoming from the Circuit Court. After all, Gonzalez had not tendered an actual post-conviction petition on which that court could make a decision on whether or not to exercise its discretion in favor of granting leave for a belated filing. And it was not until more than ten months later--on October 10, 2010--that the lawyer whom

Gonzalez' family had retained for that purpose actually submitted a post-conviction petition.

It puts a serious strain on the English language to say that an unprepared and hence unfiled petition for collateral review can be labeled as "pending" for Section 2244(d)(2) purposes. In that regard Gonzalez' situation would appear to come much closer to that presented in Griffith v. Rednour, 614 F.3d 328 (7th Cir. 2010), in which a late-tendered motion to accept a petition for leave to appeal instanter--a motion that the Illinois Supreme Court granted, then denied the petition on the merits--was held to flunk the Section 2244(d)(2) tolling provision.

This Court is of course aware that the extended delay in the actual preparation and submission of the state post-conviction petition can be ascribed to the lawyer whom Gonzalez' family retained and who was given an initial payment of $5,000 (on account of a much higher bill for his services)[4]--Gonzalez' Supp. ¶14 states that the lawyer "had full knowledge" of Gonzalez' motion and "assured petitioner that the timeliness would not be a problem," an assurance that the lawyer repeated during the ensuing months (id. ¶15). As this Court sees it, that was bad

---

[4] No conceivable justification appears to exist for such an extended delay in filing the state post-conviction petition. Retained counsel is a highly experienced lawyer in the areas of criminal law and civil rights, subject to none of the constraints that would have been faced by Gonzalez if he had tried to pursue post-conviction relief on his own.

7

advice, but in constitutional terms it cannot be the predicate for a claim of inadequate representation by counsel because there is no constitutional right to counsel who is retained to file post-conviction collateral attacks. If what has been said here indicates malpractice on counsel's part, that cannot serve as an underpinning for habeas relief.

To sum up in terms of the Section 2244(d)(2) tolling provision, its reference to "a properly filed application for State post-conviction or other collateral review" that must be "pending" was not intended to be, and is not, satisfied by a simple request for leave to file such an application, rather than a filing of the application itself. But the convoluted analysis in this opinion to this point makes it clear that some further work needs to be done to see whether Gonzalez is knocked out of the box because his federal Petition is barred on limitations grounds. Because limitations is an affirmative defense rather than a jurisdictional matter, the Illinois Attorney General's office is ordered on or before March 25, 2013 to submit a response on the issues that have been discussed here and to advise whether it wishes to assert or to waive a statute of limitations defense.

_____
    Milton I. Shadur
    Senior United States District Judge

Date:    February 20, 2013